Good morning. Please the court, Ashley Aul for Appellant the United States, and I'll watch the clock but I will try to reserve two minutes of my time. There is an unusual amount of organic chemistry involved in this illegal reentry prosecution, but the court does not need to delve deeply into it in order to reverse the order dismissing the information for two reasons. First, the California definition of methamphetamine is not so clearly over breadth in its face that it relieved defendant of the burden to demonstrate a reasonable probability that California would apply it in an over broad manner. And second, regardless who bore that initial burden under Grisel and Duenes Alvarez, uncontradicted evidence in this record demonstrated that the only over breadth the defendant identified was completely illusory, not just improbable, but impossible. Here's my concern about the record. The record is your declarations are unrebutted, but procedurally what happened here was that the district court said I don't need to get to that stuff. Lorenzo is out there. I'm going to rely on it. And I think given the district court's view, the other side could have justifiably said we don't need to put on any evidence. If in fact we're going to find, and I don't know that we are, but if in fact it's important to find that there exists no geometric isomer of methamphetamine, I'd really prefer to do it after somebody makes an evidentiary determination that it doesn't exist, simply because it will cut across cases rather than just find it because of a default on the part of the defendant. So if that issue is important, my question is, shouldn't we remand to the district court so it can conduct an evidentiary hearing? No, Your Honor, and I have two answers to why that is. And the first is, as a practical matter, there are many cases that stand in exactly the same procedural posture where there are unrebutted declarations. And in fact, we've been litigating this for a year now. There has never been a declaration. Then you'll win when we remand. And Mr. Gamboa is going to be in jail for a long time, no matter what happens in his case. So why shouldn't we get, at some point we need to have somebody make a factual determination about whether your position is right. I don't think the three of us can take judicial notice of the fact that a geometric isomer of methamphetamine doesn't exist. We're lawyers, not chemists. Can I ask, I'm going to ask a slightly different question, because your point number one is that there's no reasonable probability. When we analyze that question, normally we look to the state case law. We don't look at a factual determination. I guess the correct question would be whether anybody's been prosecuted in California for possession, distribution, whatever, of geometric isomers of methamphetamine. Do we know the answer to that question? There are not. They don't exist. This does not happen. You're basing your answer on your probably correct, I must say, argument that they don't exist. Judge Ward asked a different question. Has anybody ever been prosecuted for it? No, Your Honor. Even if they won. There is no evidence in California case law that anybody has ever been prosecuted. The reason I made the over-breath argument first, and you're right, that typically the way this goes is if the statute isn't clear on its face, and I think it's important to note that our position is this one isn't. This isn't the kind of statute, like in Griselle, where you can clearly say that the burglary statute defined a building over broadly. It's a matter of common sense. You can say that in and of itself creates a reasonable probability. This is just not that kind of statute. You look at the statute and it's very unclear whether or not this has any practical import in the real world. And so it would be a defendant's burden to come forward with evidence of a reasonable probability to satisfy Duenas-Alvarez. And there is, in this case, no evidence in two fronts. There's no evidence because there are no California cases that reflect that anybody has ever been prosecuted for a geometric or geometrical object. Could you respond to my concern that the reason that the defendants, maybe they were totally incapable of bringing forth such evidence, but the reason that they didn't have any incentive to do that in this case is the district judge was relying on Lorenzo. In this case, that's just a little bit inaccurate, Your Honor. So Lorenzo itself, this is at 902 F. 2nd. 937, left open the possibility of a different factual record. In the original published opinion, the panel recognized that the government had essentially abandoned geometric isomer arguments. And it said that there is no evidence in the record to show that geometric isomers of methamphetamine do not, in fact, exist. Well, no, the district judge may have erred in relying on Lorenzo. That's not my, I don't want to get into that. But the point is the district judge essentially said, I don't need to make findings on this issue because Lorenzo tells me the statute's overbroad. And given that, why would the defendants have any incentive to introduce any evidence on the issue? Let me lay out the chronology just a little more clearly. So at the first hearing that was held, in which effectively the district court did make findings that geometric isomers don't exist, that's at GER 21, 22, and 25. The court made these findings, but nevertheless said, I feel a little weird making these findings because the defendant hasn't submitted any evidence to do that. And so the court said, I would like you to do that, and offered the defendant, and this is at GER 34, as much time as she needed to find experts and submit a declaration. And so at that point in time, the court was not saying, I feel bound by Lorenzo. The court was saying, I'm curious about this factual issue. The government seems right. Please bring me a declaration. Two and a half months later, the defendant submitted a strategic declaration at GER 53, saying, we're not submitting any evidence. Claiming that it was because Lorenzo was controlling. But as I just pointed out, that really is not. I know the record, and I understand the chronology, but you're still asking us to make a finding by default. A finding that the district court didn't make. Not quite, Your Honor. I think the district court did make sufficient findings on what the unrebutted evidence here showed. At the time, and then said, but I'll give you a chance to rebut it. And then went ahead and imposed the enhancement without regard to whether a geometric isomer exists, correct? No, it did not. It dismissed the indictment. So this is a government appeal. Right, right. Because it went the other way. No, I understand. I mean, it dismissed the indictment. I'm sorry. So the point would be. See, the problem is, I'm having trouble finding that the district court really resolved this issue. As Judge Wardlaw's question suggests, it may or may not be pertinent to our resolving the appeal. But if it is, don't we have to have somebody make a factual finding? Given that there's so many of these cases out there. I mean, we read, I read, I'm sure we all read, this recent Seventh Circuit opinion. It's one way we could handle this, that as a matter of law, we can't say whether they exist or not, but it's in the statute, so it's overbroad. Doesn't apply. The other way we could do it is given the large, I mean, it's a novel procedure, but given that this affects many, many cases throughout the Ninth Circuit, and every panel has so far just decided to duck it in one way or another, maybe we should just remand it, and actually have an evidentiary hearing, and find out whether these things exist or not. I mean, it's not what you normally do, but I can't imagine the Supreme Court thinking in this situation that it's a ridiculous thing to do. So, my argument against that, and this gets to your point as well, is that the question of the record is not a record that would have demanded a hearing in the first place. Usually, to get a hearing, a defendant has to come forward, and I'm running short on time, but I'll keep talking. It has to come forward. You've got two more shots. It has to come forward with, it's true, with some evidence, right? You can't just barely deny something. You have to come forward with contrary evidence. There was no contrary evidence here, and to go slightly outside of the record, there's been no contrary evidence in any case, and so it would not have been an abuse of discretion for Judge Wright to say, I'm not going to have a hearing because there's no contrary evidence. But it runs contrary to notions of what the legislature does when it enacts a statute to think that the California legislature would enact a statute criminalizing something that doesn't exist. No, I think that just doesn't quite give credence to the structure of the California law. It just reflects efficiency. The California law has a general definition of isomer in 11033 that applies to almost all drugs that include isomers. It's just efficient. It says, to the extent we say isomer, it generally means optical or geometrical. Then for some particular drugs, it will carve those out and specify it includes either more or less than that. I would certainly submit, Your Honor, that respect to those particular drugs, that would give me pause. That reflects legislative care, that those drugs either should have fewer or more isomers included. But for everything else, they're just subject to a general definition. That's efficient, and all sorts of things are subject to general definitions that, as here, are context-dependent. It doesn't mean the California legislature assumed that every single drug subject to the general definition did have both those isomers. They weren't making any assumptions about organic chemistry. They were just trying to be efficient in determining, in general, what kind of isomers could or couldn't be included. So I would not read that to say that the California legislature was exercising any care in saying we believe these isomers exist. To the contrary, they just put methamphetamine in the same bucket as all the other drugs in determining... But they at least facially covered the geometric isomers. I would say semantically. I don't know. I would say semantically, certainly. There's no legislative history suggesting that they meant to accept them. So they facially covered them in a sort of a wastebucket sort of way. So they're facially within the statute. If they don't exist, that might help your case a lot. I still like somebody to tell me they don't exist. To come back to Judge Wardlaw's initial point, if this statute isn't clearly overbroad in the way that Grisell anticipated, in the way that means it per se establishes a realistic probability of overbroad application, if it's not that clear, then it's defendant's burden to come forward with evidence that it is applied this way. See, that's where you're losing me. Let me tell you why. Let's assume that there are geometric isomers, that they're plentiful, that an expert would come in and say, oh, half of the meth in the world is made up of geometric isomers. The statute would be facially overbroad, would it not? Yes. And we don't know the answer to that question. Correct. We don't know the answer. But that's the point, Your Honor. It's not clear whether – the question isn't about semantic overbreadth, right? Duenas-Alvarez is not about grammar. Duenas-Alvarez is about whether in the real world a state statute reaches more broadly than a federal one. And so to the extent that it's not clear, absent some external organic chemical fact, then that does not satisfy Grisell. And as a result, it was defendant that had to come forward with, as you said, an expert to say, these do exist, in which case this would be a different case, or to find case law, as Judge Wardlaw said, in which case it would also be a different case. It's not clear on the face of the statute because this isn't a context in which any reasonable reader can just look at it and say, oh, certainly, this is going to include isomers that the federal law does not. I see that I'm well over my time. Right. Why don't you sit down and we'll take it from later on. I will sit down for now. Thank you. May it please the Court. David Menninger for Ms. Rodriguez-Gamboa. I'd like to pick up on some points that were made. First, I'd like to discuss the... Let me stop you before these two get into the legal end. I just want to understand procedurally where you are. So the district court judge allowed your client to withdraw the plea. That's correct. And once withdrawing the plea, then decided the issue of overbreadth and then dismissed the case. And so that's the way we have it here. Couldn't your client have been charged under 8 U.S. Code 1326b1 just for having a felony conviction? Well, Your Honor, so the posture of this case... Here's my question. So the bottom line is, if we vacate the dismissal or reverse the dismissal and send it back, what's to prevent the government from simply amending this information, not even an indictment, to include this and your client gets deported, then what the hell are we doing here? Well, Your Honor, I think... So the court dismissed the indictment under 1326b, not just because of the sentencing issue. It was 1326d, Your Honor, because... Because of the drug issue. Right. Well, because the drug issue presented a due process violation in her initial removal proceedings. Of course, if this court were to reverse, the government... She's got a felony conviction. Your client has a felony conviction, can't get around a felony conviction because it's done, did six years in prison for it, and now all the government has to do is plead that your client has a felony conviction and gets deported. I'm having a hard time. Sure, Your Honor, if I may. The indictment was dismissed because under 8 U.S. Code 1326d, the removal order could not serve as the basis for any criminal charge, no matter under 1326a or b. Okay. Okay. Of course, if this court... Why not? I don't understand. I'm a guy from Omaha, so just tell me why that is. Okay. Sure. So... Your client's got no way to stay in the country. You're just fighting to keep him from going to jail. That's correct. Yeah, that's correct. I mean, this is not about whether my client can stay in the country or not. This is whether that removal order can be used as a basis for criminal punishment. And you're saying not because of the statute. Okay. Yes. If you can't correct it, go ahead. Right, right. And now you can face the withering fire. Thank you, Your Honor. So I'd like to focus on the California statute first. And I think the statutory structure is quite deliberate. You know, we have substances like... Yeah. Whether it's deliberate or not deliberate, it doesn't matter to me. The question is, do we have to find out or do we not have to find out? Your Honor, I think this court should follow the Seventh Circuit and say that that... Different statute. Statute that covered all isomers. And the Seventh Circuit said, well, all you've submitted are affidavits that say there's no geometric isomers. We don't know about anything else. But the Seventh Circuit also said, Your Honor, that issue is not pertinent here when the Seventh Circuit dictates that the Indiana statute is categorically broader than the  Okay. So your position is if the statute said we prohibit the... I forget what the other... Optical isomers of methamphetamine and the possession of magical fairy dust, it would be overbroad even if magical fairy... Even if everybody in the world knew magical fairy dust didn't exist. Yes? Well, Your Honor, first I will answer... No, I think you got... No, you don't get a first. It's a yes or no. Yes, Your Honor. If California or... So if the second thing, by common knowledge... No, that's not true here. But by common knowledge, just simply didn't exist. They said you can't possess the optical isomer of methamphetamine or the robe of a ghost. You would say the statute is facially overbroad and... In that fanciful situation, Your Honor, the state legislature chose those words and what Griselle says... And even chose them knowing that the second didn't exist. You would say the statute is overbroad. I would say it's overbroad under this court's precedent, which has been adopted by the vast majority of its... Do we have a precedent that deals with an alternative that physically is impossible? I don't know that this court, this court, I mean, certainly the Seventh Circuit has, this court has not dealt with a possibility, not a physical impossibility, but there have been cases, Your Honor, in which there is no proof of prosecution. I mean, that's what Griselle says. No, and that's where I'm closer to your side of the arm. I don't think if the statute is facially overbroad and there exists at least the theoretical possibility of prosecution, I don't think you have to come in and show that you were prosecuted. That's what our case law says. The real question is what happens when there exists no theoretical possibility of prosecution because the second thing doesn't exist? Our case law doesn't deal with that, does it? Your Honor, again, I don't think this court has confronted that question. Of course, the Seventh Circuit has. Of course, I would make clear that we definitely dispute the government's argument on the factual record. I mean, this is a situation where we have experts switching sides, saying, at first saying no geometrical isomers exist and then being retained by the government and changing their opinion. So I think the science is not nearly as clear as the government makes it. So if we were to remand, would you put on evidence that geometric isomers exist? Your Honor, I can't at this point say necessarily what would be put on. I would say that in other cases, the government, I mean, there is this record in other cases. See, I guess my question is, if we were to remand for a factual hearing and you're saying, well, I wouldn't do anything at the factual hearing, then it's not all that useful. If we were to remand for a factual hearing and you intend to contest the government's evidence at a factual hearing, it might be useful. It may not be required, as Judge Wardlaw suggests, but I'm just trying to figure out what your intention is. We would very much contest the government's evidence, Your Honor. Again, in another case, again, we're talking about stuff that's not in the record in this case, because during this case, and going back to a point that was made earlier, Lorenzo was precedential and said, California methamphetamine definition is override, period. Judge Wright did not have authority to disregard that. I mean, that was the plain language of a binding precedent, and he recognized that. I'm on track with you there. The government raised the issue, they preserved it, and now we're up on appeal. So what do we do? So, Your Honor, I think this Court should follow the Seventh Circuit, and I think that, you know, that is what Griselle, that's the import of Griselle, and I think that we need, what the government's argument really is here, Your Honor, is that whenever a party raises, like, this null set objection, then the district court has to go through all this factual finding, and that's not what the categorical approach is supposed to do. I mean, that effectively is, means that Griselle can go away whenever one party... No, no, because that's looking at the facts of the crime. We can't, under the categorical approach, look at the facts of the crime, except to the extent that they're reflected in the Shepard documents. They're not asking us to go back and figure out what your guy was carrying. They're asking us to figure out whether it was... I think it was the woman. Well, your woman, I'm sorry, is what's carrying. Francisca confused me. The question is, does it exist? But again, Your Honor, I think the same rationale applies. We don't want to have to require all of this for district courts to simply interpret a statute. Again, this is the word that was chosen. I have another concern, too. Yes, Your Honor. I mean, we have three of these cases this morning, and they come up on differing standards of review, and if we continue along the line that you're proposing, we're going to have differing results based on differing standards of review as to whether or not it can form a predicate crime or not. And I don't think that's a good thing for our circuit. Well, I agree that that's not a good thing for our circuit, Your Honor, but I think that what I'm proposing, what the Seventh Circuit did, gets rid of that problem. It just says it's overbroad. Very different factual context. The defendants were challenging their sentences. The government hadn't put any evidence in at the trial court. They were challenging their sentences on appeal because they were under an overbroad statute. And the government said, hey, we've got this evidence here. And the Seventh Circuit said, you should have put it in at the trial court. We're not going to take notice of declarations filed in other cases. So very different than your procedural situation where they showed up at the trial court and said, judge, the statute's not overbroad. We can show that it can't possibly be applied in an overbroad fashion. Your Honor, I would just slightly disagree with the Seventh Circuit posture. It was actually on plain air review because it hadn't been challenged below. And even then, the Seventh Circuit said this evidence, not only, it said, in fact, there are a few fatal flaws. The first is that this is not the proper subject of judicial notice. And then it said, but notwithstanding the declarations. They're not pertinent because the Indiana legislature chose these words. And then it said, and beside, they chose to include all isomers. And your declarations only talk about geometric. So I have no idea what the core of the Seventh Circuit holding is. But I just know it was a different factual situation in this case. It's not binding on us in any event. Of course it's not binding. But I think the unanimous panel achieved the right decision. I think that's the decision dictated by this Court's precedent. And, you know, I think that is the, I think the practical challenges of having this going up and down in every case. For example, what if this Court were to remand and there's another case where a defendant doesn't challenge the evidence and then it's settled and Mr. Rodriguez. I was asking the questions before. This is the lead case. We've got a whole bunch of cases. This one we have it preserved. We have the argument preserved. So. You preserved it. The government preserved it in this case. Unlike every other case that we have. Right. So it's preserved. I just want to, so even in the Seventh Circuit opinion though, footnote five, they stated that they take no position on the scientific merits nor should it be, their opinion should be read as limiting the government's ability to present such an argument in future proceedings. Aren't they allowing for the possibility that we're going to have to have an evidentiary hearing on this? Your Honor, I read footnote five and, you know, of course, I would say the first part, it doesn't take any view on the scientific merits because it thinks it does not have to. It does say that an argument could be presented. Right. And we can do that. I said at the outset, that is one alternative that I think our panel could do. I'm sorry, Your Honor. To just read the statute and not take a position on the scientific merits. And I think that's correct. I think that's correct. But then what do you do with the part of the Seventh Circuit footnote that says, but government, you can bring it up in the future. Right. This is the future. They brought it up. I still think that what's in the main text, I mean, I think that statement, and I think the government agrees that this court would have to disagree, would have to split with the Second Circuit. I mean, the government's saying the Seventh Circuit was wrong. So I think the government acknowledges that this court would have to split with the Second Circuit. I don't have to follow what the government tells me to do. I could follow their footnote, which says, we leave it open for a future case. This is the future case. What do we do? I think, Your Honor, what precedent dictates and is, you know, this is the precedent says when there's a substance, and this is what every circuit has done, when there is a substance that's not on there, that's the end. We don't need to delve into this messy factual issue. The statute is overbroad. That's the end of the story. All right. Beth, you went over in this case. We will submit Rodriguez-Gamboa, and we'll take up United States v. Quintana. Thank you, Your Honor.
judges: Wardlaw, Hurwitz, Bataillon